IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LISA MCNULTY, Individually and as Personal Representative of the Estate of TARA MCNULTY, and as Legal Guardian of J.M., a Minor, and HAILEY MCNULTY,<br><br>     Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>     Defendant. | Case No. 18-CV-00949-XR<br>(consolidated with 5:18-CV-00555-XR) |

### GUARDIAN AD LITEM RECOMMENDATION
### TO SETTLE CASE ON BEHALF OF
### J.M., A MINOR

Chip Evans was appointed by the court as Guardian Ad Litem for J.M. (DOB XX/XX/2005)[1] and files this recommendation that the Court approve the settlement on his behalf, and would show the Court the following:

#### Summary of the Incident

1. This case stems from the well-publicized and thoroughly litigated Sutherland Springs church shooting. On November 5, 2017, Devin Kelley, seeking revenge on his ex-wife, entered the First Baptist Church and opened fire, killing 26 and wounding 22 more.

2. Plaintiffs brought suit against Defendant United States of America under the Federal Tort Claims Act ("FTCA"), seeking damages for the Government's failure to exercise

---

[1] Pursuant to Fed. R. Civ. P. 5.1(a), I have redacted the minor's name and birthday throughout.

1

reasonable care with regard to Kelley's criminal history. After a trial solely on liability, the Court issued a finding that Defendant is 60% responsible for the damages in question and is, therefore, jointly and severally liable for the full amount of damages owed Plaintiffs. *See* ECF No. 452.

3. A second trial was held on the issue of damages to the Plaintiffs. On February 7, 2022, the Court issued Findings of Fact and Conclusions of Law with regard to the damages suffered by each Plaintiff in the case. *See* ECF No. 584.

4. A Judgment conforming to these Findings of Fact and Conclusions of Law was subsequently entered and Defendant filed a notice of appeal. *McNulty v. United States*, No. 5:18-cv-00949-XR (Apr. 5, 2022) (ECF No. 14). After protracted and complicated negotiations, a settlement has been reached, subject to the approval of the Court.

## Background of Specific Minor Plaintiff

5. J.M. was 12 years old at the time of the shooting. J.M. was attending church with his sister, mother and several other family members at the time of the shooting. The shooting claimed the life of J.M.'s mother. J.M. was also shot in the incident. J.M. has both individual personal injury claims as well as a wrongful death claim for the death of his mother.

## Plaintiff's Specific Injuries

6. J.M. suffered a fracture of his tibia as well as gunshot wounds to his right elbow and calf. These wounds caused muscle defects, weakness, and scattered shrapnel throughout the affected areas. Additionally, J.M. lost his mother in the shooting. J.M. suffers from Posttraumatic Stress Disorder and Major Depressive Disorder as a result of the shooting.

## Original Judgment of the Court

7. For J.M.'s personal injury claims, the Court originally awarded him a total $3,005,166.75 in damages for past and future medical expenses, past and future physical pain and mental anguish, past and future impairment, and disfigurement.

8. For J.M.'s Wrongful Death Claim, the Court awarded him a total of $964,429.50 for the loss of his mother.  These damages included the elements of past and future mental anguish, past and future loss of companionship, and past and future pecuniary loss.

9. J.M.'s personal injury damages represent 1.305% of the total verdict and his wrongful death damages represent .419% of the total verdict.

## Settlement

10. J.M.'s claims have settled for $1,885,308.55 (PI) and $605,040.36 (WD) respectively. These amounts are exactly proportionate to the percentage amounts he was awarded in the verdict.  In other words, his settlement share is exactly the same percentage he was awarded by the Court.  J.M.'s total settlement is $2,490,348.91.

11. The breakdown of J.M.'s settlement is as follows:

| | |
|---|---|
| Total Settlement | $2,490,348.91 |
| Attorneys' Fees | $622,587.23 |
| Pro-Rata Share of Expenses | $34,442.97* |
| Amount to Purchase Annuity | $1,500,000 |
| Amount to 142 Trust | $333,318.71* |

*To be clear, there may be additional costs incurred on his behalf in the process of closing the case out and disbursing the funds.

12. The annuity payments are broken into 3 categories and are payable as follows:

**"College Plan"**

$20,000 on J.M.'s 18th birthday

$20,000 semi-annually for 4.5 years beginning on 12/1/23 (J.M.'s prospective freshman year in college).

$1,500/month for 5 years beginning on J.M.'s 18th birthday

**Deferred Lifetime Income**

Beginning at age 25, $4,000/month for 20 years certain and stepping up to $10,700.20/month at age 45, guaranteed for 30 years but payable through the end of J.M.'s life.

**Guaranteed Lump Sum Payments**

J.M. will receive 2 additional $25,000 lump sum payments at age 18 and age 23. Because the specific rates and amounts cannot be locked in until the purchase of the annuity, the Government requires the following language in the stipulation: "In the event the cost of the annuity contract(s) has either increased or decreased by the date of purchase, the annuity payments described above shall be adjusted upward or downward to ensure that the total cost of the annuity contract(s) is equal to the Annuity Premium Amount and not more or less than that amount."

13. In conjunction with seeking the Court's approval of the Stipulation for Compromise Settlement of this case, Plaintiffs will also asking the Court to create a section 142.005 trust for the benefit J.M. (a.k.a. – the J.M. Section 142.005 Trust) (hereinafter referred to as the "142 Trust"), and to appoint Raymond James Trust, NA  (affiliated with The James Street Group),  to serve as the Trustee of the Trust, and The James Street Group, LLC shall serve as the Distribution Director under the Trust. The creation of the Trust for J.M.

will provide financial protection and security for J.M. until he turns Twenty-Five (25) years old. The undersigned guardian has verified that Raymond James Trust, N.A. is willing to serve as the Trustee of the Trust. Subject to the approval of the Court, representatives of Raymond James Trust, N.A. have agreed upon the terms of a Trust Agreement for the Trust which complies with the provisions of Section 142.005 of the Texas Property Code.

14. The total cost of the annuity is $1,500,000 and the guaranteed payout is $5,102,592. The expected payout, based upon J.M.'s life expectancy, is $5,794,899. This amount may be more if J.M. lives past his life expectancy but will not be less than the guaranteed payment.

15. Additionally, the funds that will go into the Texas Probate Code Section 142 Trust are adequate to cover any of J.M.'s ongoing needs. It is also anticipated that additional money from the recovery of the Estate of Tara McNulty will be deposited into this trust, increasing its corpus.

## Analysis

16. I have spoken to Lisa McNulty, grandmother and guardian of J.M., who stated that she fully understands the settlement for J.M. She fully understands that they do not have to settle any of their claims, and that they could proceed with the appeal. They understand that the Fifth Circuit might uphold the award in full, reverse and render a take-nothing judgment, or modify the award to a lower amount than in the judgment. She understands that by entering into this settlement, she is waiving not only her own right to appeal, but that she is also waiving J.M.'s right to appeal. She understands that neither she, nor J.M., can ever come back against this Defendant for more money for anything resulting from

this incident once the Court approves this settlement. She understands the finality of their decision and this settlement. She agrees with the settlement and distribution of funds and believe both to be in the child's best interest.

17. Continuing with an appeal in this matter poses a risk for Plaintiff given the amount of the settlement offer and the proposed distribution. Even if Plaintiff were to prevail on appeal, it is doubtful that the case would end there. Quite likely, any appellate ruling adverse to Defendant would be appealed to the United States Supreme Court. Plaintiff would incur additional fees and expenses and still be facing the uncertainty of the Fifth Circuit and United States Supreme Court. Frankly, it is my opinion that, the case needs to be settled and the litigation ended for all the parties in this case so that they can get some sort of closure, at least as to the legal part of the case, and continue healing from this horrific tragedy. Pushing forward through another several years of appellate litigation with several possible adverse outcomes in the offing does not help these families at all. The case should settle. The family wants the case closed and is ready to move on.

18. The division of the settlement is also appropriate. Great time and effort has gone into the division and disbursement of the settlement proceeds. The attorney's fees and expenses are both reasonable.

19. Based on the foregoing, I believe the proposed settlements are in J.M.'s best interest. Further, I believe that the proposed settlement breakdown is fair and that the structures and trust are appropriate for J.M. Based on the foregoing, I would respectfully request that this Honorable Court enter an order approving the proposed settlement and breakdown including the attorney's fees, case expenses and structures.

## Review

20. In order to analyze the settlement in light of the best interest of J.M., I performed the following:

   a. Review of pleadings in the matter;
   b. Review of The Findings of Fact and Conclusions of Law;
   c. Review of medical history of J.M.;
   d. Reviewed Trial exhibits, including expert reports, pertaining to J.M.;
   e. Reviewed Individual case expenses and all supporting documentation;
   f. Had several phone conversations with counsel for Plaintiff;
   g. Reviewed the Stipulation of the Government;
   h. Reviewed the proposed disbursement;
   i. Had a phone interview with Lisa McNulty;
   j. Reviewed the draft Trust documents;
   k. Reviewed the Proposed Annuity Option;
   l. Drafted this Report; and
   m. Will attend any Final Hearing(s) on the matter as the Court deems necessary.

## Attorney Fee & Expenses

21. My fee to date totals $5,000.00 and my expenses total $0.00. I hereby request a Guardian Ad Litem fee of $5,000 payable by Plaintiffs.

Respectfully Submitted:

By: /s/ Chip Evans
Walter P. "Chip" Evans, IV
TX State Bar No. 24002068

Evans Reilley Herlihy
4407 Caves Road, Suite 611
Austin, TX 78746
(512) 732-2727 Tel
(512) 732-2731 Fax
chip@evanstxlaw.com